# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| ESTATE OF YOLANDA JEANNE WEBBER, through personal representative DEBRA WEBBER, on behalf of TENEKKI WEBBER and SHEMEKA WEBBER, as estate beneficiaries, | § § § § § § | |
| Plaintiffs, | § § | |
| v. | § | Civil Action No. 3:18-CV-1054-L |
| | § | |
| T-MOBILE US, INC. f/k/a METROPCS, COMMUNICATIONS, INC.; T-MOBILE, USA, INC.; T-SYSTEMS NORTH AMERICA, INC.; DEUTSCHE TELEKOM NORTH AMERICA, INC.; and THE CITY OF DALLAS, | § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Defendants' Motion to Transfer (Doc. 6), filed April 30, 2018; T-Mobile US, Inc. and T-Mobile USA, Inc.'s Motion for Judgment on the Pleadings (Doc. 9), filed May 21, 2018; Plaintiffs' Motion to Remand (Doc. 10), filed May 25, 2018; and Plaintiffs' Motion for Leave to File First Amended Complaint, filed July 3, 2018 (Doc. 16). After carefully considering the motions, briefing, pleadings, record, and applicable law, the court **grants** Plaintiffs' Motion to Remand and **denies as moot** all remaining motions.

## I.    Background

In Plaintiffs' Original Petition ("Petition"), they allege that on the evening of March 11, 2017, Yolanda Jeanne Webber ("Yolanda Jeanne") was returning from a family dinner with her sister and

niece. Pls.' Orig. Pet. ¶ 5.1. On the car ride home, she began to develop shortness of breath. *Id.* As she gasped for air, she uttered what would be her last words, "Call 9-1-1!" *Id.* ¶ 5.2. Yolanda Jeanne's sister tried to call 9-1-1 on her mobile telephone and was unable to connect with a 9-1-1 operator. *Id.* ¶ 5.3. Yolanda Jeanne's niece also tried to call 9-1-1 on her mobile telephone and was also unable to connect with a 9-1-1 operator. *Id.* Yolanda Jeanne's family removed her from the car and placed her on the sidewalk, as bystanders also attempted unsuccessfully to reach a 9-1-1 operator. *Id.* Yolanda Jeanne's sister, Tennecki Webber, then called their other sister, Debra Webber, who went to a nearby fire station where first responders "were ready, willing, and able to assist." *Id.* ¶ 5.4. "However, by the time they reached Yolanda Jeanne, it was too late." *Id.* By the time Yolanda Jeanne was stabilized and transported to the hospital, "she had sustained an anoxic brain injury so severe that doctors recommended removing her from life support." *Id.* ¶ 5.5. Yolanda Jeanne died "after her family made that difficult decision." *Id.*

Plaintiffs Debra Webber, Tenneki Webber, Shemeka Webber, and the Estate of Yolanda Jeanne Webber (collectively, "Plaintiffs") instituted this action in the 160th Judicial District Court of Dallas County, Texas, for claims arising from Yolanda Jeanne's death. Their claims include negligence, gross negligence, products liability, violation of the Texas Civil Wiretap Act, and violation of the Texas Deceptive Trade Practices Act ("DTPA"). *Id.* ¶¶ 6.1-6.26. Plaintiffs also allege wrongful death and survival claims. *Id.* ¶¶ 7.2-7.6. Defendants are T-Mobile USA, Inc. ("T-Mobile"), T-Mobile's publicly-traded parent company, T-Mobile US, Inc. (f/k/a MetroPCS Communications, Inc.) ("TMUS") (collectively, the "T-Mobile Defendants"), T-Systems North America, Inc., Deutsche Telekom North America, Inc., and the City of Dallas (the "City").

As to the City, Plaintiffs allege tort claims arising under theories of general negligence and gross negligence. Plaintiffs allege that the City owed Yolanda Jeanne a duty of ordinary care to "maintain its equipment to prevent defective or inadequate equipment conditions." *Id.* ¶ 6.9. Plaintiffs further allege that the City "knew or should have known of the dangers created by its acts and omissions and failed to exercise ordinary care to protect Yolanda Jeanne from harm." *Id.* Plaintiffs allege the City breached this duty through, among other things: (1) the outdated conditions of its networks and equipment; (2) defective or inadequate equipment conditions resulting in interruptions in 9-1-1 service; (3) the use of software that did not adequately protect from foreseeable installation of malware, tampering, or hacking; (4) the use of call answering technologies that caused legitimate calls to remain on hold or be disconnected, or failed to differentiate fraudulent or duplicative calls from legitimate calls; and (5) the unsecured condition of physical infrastructure used to transmit 9-1-1 calls. *Id.* ¶ 6.10(ii.-oo.) Finally, Plaintiffs allege that the City's failure to exercise ordinary care proximately caused their damages because the City's lack of care did not merely delay or hinder medical treatment; instead, its "actions and omissions . . . severed an existing link that all parties reasonably relied upon. Had there been no 9-1-1 at all, Yolanda Jeanne would have received treatment in the time Yolanda Jeanne's family fruitlessly spent on hold with 9-1-1." *Id.* ¶ 6.10(pp.)

Addressing the City's governmental immunity, Plaintiffs assert in the Petition that their allegations establish a waiver of the City's immunity pursuant to the Texas Tort Claims Act ("TTCA"), Tex. Civ. Prac. & Rem. Code § 101.021, for personal injury or death that is proximately caused by the use or condition of tangible personal property. *Id.* ¶ 6.11.

The T-Mobile Defendants removed the case to this court on April 25, 2018, contending that complete diversity of citizenship exists between the parties and that the amount in controversy exceeds $75,000, exclusive of interest and costs. *See* 28 U.S.C. § 1332(a); Defs.' Notice of Removal ¶ 7 (Doc. 1).[1] In the Notice of Removal, the T-Mobile Defendants acknowledge that Plaintiffs and the City are all citizens of Texas but contend that the City was improperly joined, and that, therefore, its citizenship should be disregarded for purposes of diversity jurisdiction. Defs.' Notice of Removal ¶ 7 (Doc. 1) Plaintiffs moved to remand the case on May 25, 2018, arguing that the City was properly joined as a Defendant, and, thus, there is not complete diversity of citizenship, which requires that the action be remanded to state court. Plaintiffs also seek attorney's fees incurred in connection with the motion for remand. The motion has been fully briefed and is ripe for adjudication.

## II. Applicable Legal Standards

### A. Removal Jurisdiction

Federal courts are courts of limited jurisdiction and possess only that power authorized by the United States Constitution or by statute. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). Unless Congress expressly provides otherwise, a defendant may remove a state court civil action to a federal district court if the district court has original jurisdiction over the action. 28 U.S.C. § 1441(a). A federal court has original jurisdiction over civil actions in which there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The statute requires complete

---

[1] As neither Defendant T-Systems North America, Inc. nor Deutsche Telekom North America, Inc. had been served at the time of removal, no consent for removal is required of them. 28 U.S.C. §1446 (A removing party must secure the consent only of defendants who have been "properly joined and served.").

diversity of citizenship; that is, a district court cannot exercise subject matter jurisdiction if any plaintiff shares the same citizenship as any defendant. *See Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857 (5th Cir. 2003) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)). In considering citizenship, however, the court considers only the citizenship of real and substantial parties to the litigation; it does not take into account nominal or formal parties that have no real interest in the litigation. *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460-61 (1980). The citizenship of a party that is improperly joined must be disregarded in determining whether diversity of citizenship exists. *Johnson v. Heublein*, 227 F.3d 236, 240 (5th Cir. 2000).

### B. Improper Joinder

A party seeking to remove an action to federal court on the basis of fraudulent or improper joinder bears a heavy burden. *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 574 (5th Cir. 2004) (en banc). In *Smallwood*, the court "adopt[ed] the term 'improper joinder' as being more consistent with the statutory language than the term 'fraudulent joinder,' which has been used in the past. Although there is no substantive difference between the two terms, 'improper joinder' is preferred." *Id*. at 571 n.1. Accordingly, the court uses the term "improper joinder" in this opinion. As the parties wishing to invoke federal jurisdiction by alleging improper joinder, Defendants have the burden to establish that the City was joined by Plaintiffs to defeat federal jurisdiction. *Id*. at 575. The court is to resolve "any doubt as to the propriety of removal" in favor of remand. *Gutierrez v. Flores*, 543 F.3d 248, 251 (5th Cir. 2008) (citation and quotation marks omitted).

To establish improper joinder, Defendants must prove: "(1) actual fraud in the pleading of jurisdictional facts, or (2) inability of the plaintiff to establish a cause of action against the non-diverse party in state court." *Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003) (citing *Griggs v. State*

*Farm Lloyds*, 181 F.3d 694, 698 (5th Cir. 1999)). Since Defendants do not assert fraud on the part of Plaintiffs, the test for improper joinder is "whether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an in-state defendant, which stated differently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant." *Smallwood*, 385 F.3d at 573 (citing *Travis*, 326 F.3d at 648).

In addressing this issue, the district court must determine whether a plaintiff has "any possibility of recovery against the party whose joinder is questioned." *Travis*, 326 F.3d at 648 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). "If there is arguably a reasonable basis for predicting that state law might impose liability on the facts involved, then there is no [improper] joinder." *Great Plains Trust*, 313 F.3d at 312 (internal quotations and citations omitted). "This possibility, however, must be reasonable, not merely theoretical." *Id*. If there is a reasonable possibility that a plaintiff can recover on any of his or her claims, there is no improper joinder, and the case must be remanded. *Smallwood*, 385 F.3d at 575. In making this determination regarding improper joinder, a court does not "decide whether the plaintiff will actually or even probably prevail on the merits, but look[s] only for a [reasonable] possibility that [the plaintiff] may do so." *Dodson v. Spiliada Mar. Corp.*, 951 F.2d 40, 42 (5th Cir. 1992) (citations omitted). To determine whether a party was improperly joined, the court "must evaluate all of the factual allegations in the light most favorable to the plaintiff, resolving all contested issues of substantive fact in favor of the plaintiff." *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 308 (5th Cir. 2005) (quoting *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545, 549 (5th Cir. 1981)).

On the other hand, if there is no reasonable possibility for predicting liability against the nondiverse defendant, improper joinder exists, and the action remains in federal court.

In deciding the question of improper joinder, the court may either (1) "conduct a Rule 12(b)(6)-type analysis, looking initially at the allegations of the complaint to determine whether [it] states a claim under state law against the in-state defendant"; or (2) in limited circumstances, conduct a summary inquiry "to identify the presence of discrete and undisputed facts that would preclude plaintiff's recovery against the in-state defendant." *Smallwood*, 385 F.3d at 573-74. "When a defendant seeks to remove a case, the question of whether jurisdiction exists is resolved by looking at the complaint at the time the [notice of] removal is filed." *Brown v. Southwestern Bell Tel. Co.*, 901 F.2d 1250, 1254 (5th Cir. 1990). A court may not look to postremoval filings or pleadings to determine the issue of improper joinder. *Griggs v. State Farm Lloyds*, 181 F.3d at 700 (citation omitted). Limiting the determination of questions regarding removal jurisdiction to the claims set forth in the state pleadings at the time of removal ensures finality and early resolution of the jurisdictional issue, both of which reduce expense and delay to the parties and court. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995).

### C. The Applicable Pleading Standard

In *International Energy Ventures Management, L.L.C. v. United Energy Group, Limited*, the Fifth Circuit addressed whether state or federal pleadings standards apply to the issue of improper joinder and held that a federal court must apply the federal pleading standard. 818 F.3d 193, 208 (5th Cir. 2016). The federal pleading standard requires a plaintiff's pleadings to contain sufficient facts to state a claim for relief that is plausible on its face, providing more than a mere possibility of recovery. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Moreover, the pleadings must

provide more than "labels and conclusions" and do more than merely restate the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Analysis

If the court finds a reasonable basis to predict that Plaintiffs can potentially recover on one of the causes of action asserted against the City, it must remand the entire case. *Smith-Manning v. State Farm Lloyds*, 2013 WL 5637539, at *2 (N.D. Tex. Oct. 14, 2013) (Lynn, J.) (citing *Gray ex rel. Rudd v. Beverly Enters.-Miss., Inc.*, 390 F.3d 400, 412 (5th Cir. 2004)). In ruling on Plaintiffs' motion, this court only asks whether, applying the federal pleading standard, there is a reasonable basis to predict that Plaintiffs state a viable claim and might be able to recover under state law against the City. *See Smallwood*, 385 F.3d at 573. For the reasons that follow, the court concludes that there is a reasonable basis to predict that Plaintiffs have stated a plausible claim for relief against the City, *see Twombly*, 550 U.S. at 556, and might be able to recover against the City.

"Sovereign immunity protects the state and its various divisions, such as agencies and boards, from suit and liability, whereas governmental immunity provides similar protection to the political subdivisions of the state, such as counties, cities, and school districts." *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57-58 (Tex. 2011) (citation omitted). Under the doctrine of governmental immunity, a municipality is immune from tort liability from its own acts or the acts of its agents, unless the TTCA clearly and unambiguously waives immunity. *City of Amarillo v. Martin*, 971 S.W.2d 426, 427 (Tex.1998). Waivers of immunity find their source in legislative enactments. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 656 (Tex. 2008) ("Because the Legislature is better suited to balance the conflicting policy issues associated with waiving immunity, we look to pertinent legislative enactments to determine the extent to which

immunity has been voluntarily relinquished."). In a suit against a governmental unit under the TTCA, a plaintiff must "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity." *Dallas Area Rapid Transit v. Whitley*, 104 S.W.3d 540, 542 (Tex. 2003); *see also Garcia*, 253 S.W.3d at 659 (The "[TTCA] is the only, albeit limited, avenue for common-law recovery against the government."); *Gipson v. City of Dallas*, 247 S.W.3d 465, 470 (Tex.App.—Dallas 2008, pet. denied) (citations omitted) ("Unless the [TTCA] waives immunity, a municipality is immune from suit and from tort liability for its own acts or the acts of its agents for its government functions.").

In opposition to Plaintiffs' Motion to Remand, Defendants argue that Plaintiffs' Petition and claims against the City lack facial plausibility because the Petition fails to plead facts that would establish a waiver of the City's governmental immunity under the TTCA. Defendants contend that: "To overcome governmental immunity for claims that involve providing 9-1-1 services, both TTCA § 101.021 and § 101.062(b) must be satisfied." Defs.' Resp. 3 (Doc. 12). Plaintiffs counter that they have adequately alleged waiver under TTCA § 101.021 and are not required to allege that the City violated a statute or ordinance, or allege how it purportedly waived immunity under TTCA § 101.062(b), to make plausible allegations of liability against the City. The court examines these arguments in turn.

### A. TTCA § 101.021

Section 101.021 of the TTCA provides the statutory requirements for a limited waiver of governmental immunity under the TTCA:

**Memorandum Opinion and Order - Page 9**

> A governmental unit in the state is liable for:
>
> (1) property damage, personal injury, and death proximately caused by the wrongful act or omission or the negligence of an employee acting within his scope of employment if:
>
> . . .
>
> (B) the employee would be personally liable to the claimant according to Texas law; and
>
> (2) personal injury and death so caused by a condition or use of tangible personal or real property if the governmental unit would, were it a private person, be liable to the claimant according to Texas law.

Tex. Civ. Prac. & Rem. Code § 101.021.

As stated previously, Plaintiffs assert in the Petition that their allegations establish a waiver of the City's immunity pursuant to the TTCA § 101.021(2) for personal injury or death that is proximately caused by the use or condition of tangible personal property. Pls.' Orig. Pet. ¶ 6.11. Notably, T-Mobile does not challenge Plaintiffs' allegation that the alleged deficiencies in the 9-1-1 system were "conditions or use" of property or that Plaintiffs have failed to adequately allege proximate cause under the TTCA. Viewing the allegations in the Petition as true, and in light of the express allegation concerning waiver under TTCA § 101.021(2), the court determines that Plaintiffs have adequately alleged claims against the City that fall within the TTCA's limited waiver of governmental immunity. *See Whitley*, 104 S.W.3d at 542 (In a suit against a city under the TTCA, a plaintiff must "affirmatively demonstrate the court's jurisdiction by alleging a valid waiver of immunity.").

### B.     TTCA § 101.062(b)

The T-Mobile Defendants also assert that Plaintiffs have failed to adequately plead a waiver of the City's governmental immunity, since they fail to allege a violation of a statute or ordinance

under section 101.062 of the TTCA. Plaintiffs counter that they have adequately alleged waiver under TTCA § 101.021 and need not allege that the City also violated a statute or ordinance or allege how it purportedly waived immunity under TTCA § 101.062(b) to make plausible allegations of liability against the City. The court agrees.

Even in situations in which immunity may generally be waived, such as under section 101.021 of the TTCA, statutory exceptions for emergencies still can override the immunity waiver. *See City of San Antonio v. Hartman*, 201 S.W.3d 667, 672 (Tex. 2006). Immunity is not waived for a claim that arises from an action of an employee that involves providing 9-1-1 service or responding to a 9-1-1 emergency call if the action does not violate a statute or ordinance applicable to the action. TTCA § 101.062(b).[2] "Thus, in claims arising from the action of a city employee responding to a 9-1-1 emergency call, immunity is waived only if the action violates a statute or ordinance applicable to the action." *City of San Antonio v. Girela*, 2011 WL 721484, at *2 (Tex. App.—San Antonio 2011, no pet.) (citing *Guillen v. City of San Antonio*, 13 S.W.3d 428, 432 (Tex. App.—San Antonio 2000, pet. denied)).

The T-Mobile Defendants contend that the emergency exception in section 101.062(b) applies in this case, that Plaintiffs failed to allege a violation of a statute or ordinance under section 101.062 of the TTCA, and that, consequently, they have failed to plead adequately a waiver of the City's governmental immunity. The court rejects this argument.

---

[2] Section 101.062(b) provides that the TTCA "applies to a claim against a public agency that arises from an action of an employee of a public agency . . . that involves providing 9-1-1 service or responding to a 9-1-1 emergency call only if the action violates a statute or ordinance applicable to the action." Tex. Civ. Prac. & Rem. Code § 101.062(b).

**Memorandum Opinion and Order - Page 11**

The claims against the City asserted in the Petition arise from the alleged inadequacies in equipment leading to the city-wide shutdown of the 9-1-1 system on March 11, 2017, and concern the City's alleged failure to maintain adequately its networks and equipment, or to detect equipment malfunctions, defects, tampering, or "hacking" activity, not the negligent actions of an employee or volunteer in the course of responding to an emergency. *See* Pls.' Orig. Pet. ¶¶ 6.1-6.2. As such, section 101.062 of the TTCA does not apply to the facts alleged in the Petition. Additionally, as Plaintiffs correctly note, the cases upon which the T-Mobile Defendants rely are inapposite, as they all involve alleged negligence of employees forced to make emergency decisions in the course of responding to an emergency.[3]

In sum, based on the allegations in the Petition, the court concludes that Plaintiffs have alleged a plausible claim for recovery against the City. *See Iqbal*, 556 U.S. 662 at 678. Because there is a reasonable possibility that Plaintiffs can recover on their negligence claim, there is no improper joinder, and complete diversity between the parties does not exist. *See Smallwood*, 385 F.3d at 575.

## IV. Plaintiffs' Request for Attorney's Fees

Plaintiffs request that the court award them attorney's fees incurred for obtaining a remand of this action to state court pursuant to 28 U.S.C. § 1447(c). Pls.' Mot. for Remand 5 (Doc. 10) ("An award of attorney's fees would be proper as the inevitable remand was apparent to the T-Mobile

---

[3] *See City of San Antonio v. Girela*, 2011 WL 7211484 (Tex. App.—San Antonio March 2, 2011, no pet.) (In a lawsuit against a city for acts of city-employed paramedics responding to a 9-1-1 call alleging improper treatment and decision-making in the course of responding to an emergency, the court held that the state-law claims were barred by section 101.062 of the TTCA because of governmental immunity, when the plaintiff failed to plead that a statute or ordinance was violated by paramedics.); *Warren v. City of San Antonio*, 2007 WL 9720281 (W.D. Tex. Feb. 16, 2007) (same); *Guillen v. City of San Antonio*, 13 S.W.3d 428, 434 (Tex. App.—San Antonio 2000, pet. denied) (same).

**Memorandum Opinion and Order - Page 12**

entities from the outset.") Section 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). There is no "automatic entitlement to an award of attorney's fees." *Valdes v. Wal-Mart Stores, Inc.*, 199 F.3d 290, 292 (5th Cir. 2000). Bad faith is not "a prerequisite to awarding attorney fees and costs." *Id.* (citation omitted). "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005) (citations omitted). In this regard, the court must decide "whether the defendant had objectively reasonable grounds to believe the removal was legally proper" at the time of removal, "irrespective of the fact that it might ultimately be determined that removal was improper." *Valdes*, 199 F.3d at 293.

The court determines that an award of fees is not warranted. This is not an instance in which the court can conclude that the T-Mobile Defendants lacked objectively reasonable grounds to believe that removal was legally proper. Whether sufficient facts have been alleged for the district court to predict that a plaintiff might be able to recover against an in-state defendant is often a close call and not readily determinable. This is one of those cases. Moreover, the court is not aware of any cases in which the Fifth Circuit or Texas appellate courts have addressed the precise issue in play in this case. The court cannot say that the T-Mobile Defendants lacked objectively reasonable grounds to remove. Plaintiffs have not persuaded the court that an award of attorney's fees is merited under applicable law. Accordingly, the court will deny Plaintiffs' request for attorney's fees.

## V. Conclusion

As the City and Plaintiffs are citizens of Texas and there is no improper joinder, complete diversity of citizenship between the parties does not exist. Because complete diversity does not exist, the court lacks jurisdiction to entertain this action, and it must be remanded to state court. *See* 28 U.S.C. § 1447(c). Accordingly, the court **grants** Plaintiffs' Motion to Remand (Doc. 10); **denies** Plaintiffs' request for attorney's fees; **denies as moot** Defendants' Motion to Transfer (Doc. 6); **denies as moot** T-Mobile US, Inc. and T-Mobile USA, Inc.'s Motion for Judgment on the Pleadings (Doc. 9); and **denies as moot** Plaintiffs' Motion for Leave to File First Amended Complaint (Doc. 16). Pursuant to 28 U.S.C. § 1447(c), the court **remands** this action to the 160th Judicial District Court, Dallas County, Texas, from which it was removed, and **directs** the clerk of the court to effect the remand in accordance with the usual procedure.

**It is so ordered** this 31st day of July, 2018.

Sam A. Lindsay
United States District Judge